IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MIKELANN REED,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>　　　　　　Defendant. | CV 21-40-BLG-SPW-TJC<br><br><br>**FINDINGS AND<br>RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE** |

Plaintiff Mikelann Reed ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  (Doc. 2.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 12.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial of disability benefits and remand for an award of disability benefits, or alternatively for further administrative proceedings.  (Doc. 14.)  The motion is ripe for the Court's review.  (Doc. 16.)

1

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court **RECOMMENDS** that the ALJ's decision be **AFFIRMED**.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed two prior disability applications in November 2012 and June 2015, and was found not disabled.  (A.R. 144, 159.)  Plaintiff filed a third application for SSI benefits on May 23, 2018, which is at issue in this case.  (A.R. 15.)  A hearing was held before Administrative Law Judge Michele M. Kelley (the "ALJ") on July 30, 2020.  (A.R. 110-140.)  On August 18, 2020, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 15-27.)  Plaintiff requested review of the decision, and on February 12, 2021, the Appeals Council denied Plaintiff's request.  (A.R. 1-6.)  Thereafter, Plaintiff filed the instant action.  (Doc. 2.)

## II.   LEGAL STANDARDS

### A.   Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See*

2

*also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may

reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a

preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d

1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which,

considering the record as a whole, a reasonable person might accept as adequate to

support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a

whole, the Court must weigh both the evidence that supports and detracts from the

ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v.*

*Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the

denial of benefits if the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400

F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one

rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44

F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing

the Secretary's conclusion, the court may not substitute its judgment for that of the

Secretary."). However, even if the Court finds that substantial evidence supports

the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to

apply the proper legal standards in weighing the evidence and reaching a

conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake*

*v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant

must show two things: (1) the claimant suffers from a medically determinable

physical or mental impairment that can be expected to last for a continuous period

of twelve months or more, or would result in death; and (2) the impairment renders

the claimant incapable of performing the work she previously performed, or any

other substantial gainful employment which exists in the national economy.  42

U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to

be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step

sequential evaluation process.  If an applicant is found to be "disabled" or "not

disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420

F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec.*

*Admin*., 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so,
   then the claimant is not disabled within the meaning of the Social
   Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b),
   416.920(b).

2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step.  *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)).  At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.   THE ALJ'S FINDINGS

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim.  First, the ALJ found Plaintiff had not engaged in substantial

gainful activity since her alleged onset date of May 23, 2018.  (A.R. 18.)  Second,
the ALJ found that Plaintiff had the following medically determinable severe
impairments: degenerative disc disease of the lumbar spine and cervical spine,
obesity, depression, anxiety, and bulimia.  (A.R. 18.)

Third, the ALJ found that Plaintiff does not have an impairment or
combination of impairments that meets or medically equals any one of the
impairments in the Listing of Impairments.  (A.R. 19-20.)  Fourth, the ALJ stated
Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b): She can lift,
> carry, push, and pull ten pounds frequently and twenty pounds
> occasionally; walk and stand about six hours in an eight-hour workday
> with normal breaks; and sit about six hours in an eight-hour workday
> with normal breaks (normal breaks are defined as occurring every two
> hours with at least two ten to fifteen minute breaks and one thirty
> minutes or more); frequently climb ramps and stairs, balance, kneel,
> crouch, and crawl; and occasionally climb ladders, ropes, scaffolds
> and stoop.  She can understand, remember, and carry out simple tasks;
> can maintain attention, concentration, persistence, and pace for such
> tasks for 8-hour workdays & 40-hour workweeks; can tolerate
> occasional interaction with supervisors, coworkers, and the public;
> can tolerate usual simple work situations; and can tolerate occasional
> changes in routine work settings.  The above limitations are
> considered sustained work activities in an ordinary work setting on a
> regular and continuing basis.

(A.R. 20.)

The ALJ next found that Plaintiff did not have past relevant work, but could
perform jobs in the national economy, such as price marker/checker, mail sorter, or

photocopier/collator.  (A.R. 26.)  Thus, the ALJ found that Plaintiff was not disabled.  (A.R. 27.)

## IV.   DISCUSSION

Plaintiff presents the following issues for review: (1) whether the ALJ properly considered her subjective symptom testimony; (2) whether the ALJ properly considered the medical opinions; (3) whether the ALJ properly concluded Plaintiff's impairments did not meet a Listing; and (4) whether Plaintiff's impairments were properly incorporated into the vocational expert's hypothetical. The Court will address each in turn.

### A.   Subjective Symptom Testimony

Plaintiff argues that the ALJ improperly discounted her subjective symptom testimony relating to the intensity, persistence, and functional limiting effects of her impairments.  The Commissioner argues the ALJ reasonably evaluated Plaintiff's subjective complaints.

A claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.* Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ provides "specific, clear and convincing

reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms. Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her symptoms. The Court finds the ALJ did so.

First, the ALJ found Plaintiff's statements about her level of physical functional compromise were not supported by the objective medical evidence. (A.R. 22.)  Plaintiff testified that she has difficulty walking, standing, sitting, bending and lifting due to due to chronic pain in her back, legs and whole body. (A.R. 120-122.)  She stated that she lays down for approximately 80 percent of the day.  (A.R. 122.)  When she does household chores, she has to take breaks every five to ten minutes.  (A.R. 125.)

In assessing Plaintiff's subjective symptom testimony, the ALJ may take objective medical evidence into consideration. *Baston*, 359 F.3d at 1196.  The ALJ acknowledged that Plaintiff had a history of lumbar discectomy and MRI imaging showing disc herniations in her lumbar spine, with moderate canal narrowing and mild to moderate foraminal narrowing.  (A.R. 22.)  The ALJ also noted that examinations performed in 2018 showed Plaintiff had tenderness to palpitation, limitations with lumbar flexion, diminished sensations in her lower extremities and a wide based, antalgic gait.  (A.R. 22.)  But the ALJ pointed out that Plaintiff underwent epidural steroid injections in October 2018 and September 2019, and reported she had improved back pain and was doing well with the injections.  (A.R. 22.)  Examinations following the first injection revealed Plaintiff had a normal gait and station, had no back tenderness, no focal neurological, sensory or motor deficits, normal strength and reflexes, good range of motion and was able to walk

9

on her heels and toes.  (A.R. 22.)  Plaintiff was also able to sit comfortably through an entire examination without getting up to move.  (A.R. 22.)  The ALJ, therefore, concluded the medical evidence did not support the level of pain Plaintiff alleged, or her need for frequent breaks and significant bed rest.  The ALJ's observations are consistent with the medical record.  (*See* A.R. 654-59, 674, 667, 672, 700, 703, 719, 722, 733, 737, 755, 866, 868, 870, 883, 929, 968, 1005, 1009, 1013-14, 1025, 1035-36.)  An ALJ may reject a claimant's statements that "do not comport with objective evidence in [the] medical record."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

The ALJ also found Plaintiff's statements about the intensity, persistence and limiting effects of her mental health conditions were inconsistent with the objective medical evidence.  (A.R. 22-23.)  The ALJ noted that Plaintiff reported feeling fatigued, having problems with memory and concentration, and was easily annoyed and irritated.  (A.R. 22.)  The ALJ contrasted Plaintiff's reports with evidence showing Plaintiff's mental status examinations were normal overall, and showed she was alert and oriented, her cognition and memory were intact, and she was cooperative and pleasant.  (A.R. 23.)  The ALJ also stated that although Plaintiff was observed to have depression and anxiety at times, it was noted to still be within normal limits.  (A.R. 23.)  The ALJ further pointed to more recent records that showed Plaintiff had reported her mental health medications were

working well and "mood wise, she was in a good place." (A.R. 23-24.) The ALJ's

findings are supported by the record. (*See* A.R. 655, 679, 691, 694, 703-04, 707,

710, 719, 722-24, 726, 729, 745, 747, 755-56, 765, 851-52, 866, 883, 894, 920,

930, 933, 937, 942, 946, 950, 953, 958, 962, 975, 983, 987, 999, 1004, 1009, 1019,

1030, 1039, 1056, 1059, 1062, 1065, 1068, 1080, 1095, 1110.)

Next, the ALJ found Plaintiff's activities of daily living were inconsistent

with her alleged level of functional compromise. (A.R. 23.) The ALJ noted that

Plaintiff is able to drive, goes shopping at big box stores, is a caretaker for her

disabled sister-in-law, takes care of her disabled husband's mental "stuff,"

manages her own medications and attends appointments alone. (A.R. 23.) The

ALJ also pointed out that Plaintiff planned a wedding, is the primary meal preparer

in her home, takes care of a pet, regularly goes for walks to the gas station and

sometimes at the mall, and reported walking up to two miles at times. Plaintiff

also reported living in a second floor apartment and going up and down the stairs

up to fifteen times a day, helping her sister-in-law move, and also moving herself

and her husband into a new apartment. (A.R. 23.) The ALJ's observations are

supported by the evidence in the record (s*ee* A.R. 423, 426, 701, 708, 724, 740,

752, 757-58, 766, 790, 871, 874, 876, 898, 903, 916, 956, 960, 977, 999, 1019,

1042), and are legitimate reasons for discounting a claimant's testimony. *See*

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating an ALJ may

11

discount a claimant's subjective complaints when they are inconsistent with the claimant's activities).

Plaintiff argues a different interpretation should be drawn from the medical records.  But the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  Rather, it "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."  *Andrews v. Shalala*, 53 F.3d 1035, 1039-1040 (9th Cir. 1995).

The Court therefore finds the ALJ's evaluation of Plaintiff's testimony is properly supported by specific, clear and convincing reasons.

   **B.      Consideration of Medical Opinions**

Plaintiff next argues the ALJ improperly discounted the medical opinions of Dr. Watkins, Dr. Sophia and Licensed Clinical Social Worker, Kyanne Wear.  The Commissioner counters that the medical evidence was appropriately evaluated.

Plaintiff argues the Ninth Circuit's "specific and legitimate" standards for discounting treating and examining source opinions apply in this case.  But because Plaintiff applied for benefits after March 27, 2017, the ALJ properly considered the medical evidence under a new set of regulations governing the evaluation of medical opinion evidence.  20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations eliminated the use of the term "treating source" and eliminated the

12

traditional hierarchy between treating, examining, and non-examining physicians.
*Id.*

Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).  The ALJ is directed to consider medical opinions or prior administrative medical findings together according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors such as the medial source's familiarity with other evidence in the claim or understanding of the disability program requirements.  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  The two most important factors are supportability and consistency, and the ALJ must explain how those factors were considered in the decision.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  The ALJ is generally not required to explain how the remaining factors were considered, except when deciding among differing, yet equally persuasive opinions or findings on the same issue.  *Id.*

The Ninth Circuit has determined that these revised regulations are
irreconcilable with its prior cases affording deference to the opinions of treating
physicians, and with the requirement that the ALJ provide specific and legitimate
reasons for rejecting the opinions of a treating physician. *Woods v. Kijakazi*, 32
F.4th 785, 792 (9th Cir. 2022).  Under the new regulations the "ALJ's decision,
including the decision to discredit any medical opinion, must simply be supported
by substantial evidence." *Id.* at 787.

> a.   Dr. Watkins

Plaintiff contends that the ALJ improperly discounted the opinions of one of
her physicians, Dr. Justin Watkins.  The ALJ considered Dr. Watkins' opinion, but
found it unpersuasive.  (A.R. 24.)  The ALJ cited to Dr. Watkins' note from
August 25, 2018, which stated Plaintiff's "back pain is causing her significant
dysfunction and inability to ambulate, as well as significant pain and difficulty
doing tasks that involve flexibility and movement of the back."  (A.R. 24, 659.)
But the ALJ pointed out that Dr. Watkins also noted that Plaintiff "uses no
assistive devices for ambulation," and was "able to sit, stand and walk unassisted
and can handle objects with both gross and fine manual motor dexterity."  (A.R.
659.)

The ALJ ultimately found Dr. Watkins' opinion was vague because he did
not "provide specifics as to her functional limitations and abilities, including how

often or how long she can perform such activities with measurable determinants, such as never, frequent or occasional." (A.R. 24.)

The ALJ's determination is supported by substantial evidence. The new regulations define a medical opinion as a statement from a medical source about what a claimant can still do despite her impairments, and whether she has one or more impairment-related limitations or restrictions in the ability to perform the physical, mental or other demands of work activities or adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2). The ALJ accurately determined that Dr. Watkins' did not clearly specify any limitations, including how long or how often Plaintiff could or could not perform work-related activity. An ALJ may reject a vague opinion that does not provide useful statements regarding the degree of the claimant's functional limitations. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).

### b.   Dr. Sophia

Plaintiff also argues that the ALJ inappropriately rejected the opinions of an examining psychologist, Dr. Sophia. The ALJ discussed Dr. Sophia's January 31, 2019 psychological evaluation. (A.R. 24.) Dr. Sophia opined that Plaintiff's ability to work "may be inhibited due to her physical limitations." (A.R. 682.) Dr. Sophia further opined that Plaintiff had markedly impaired social functioning and short-term memory, and impaired ability to sustain focused attention long enough

to allow a timely completion of tasks.  (A.R. 681.)  Dr. Sophia concluded that

mental health issues, including deficient short-term memory and decreased

attention and concentration, were preventing Plaintiff from being employed.  (A.R.

682.)  Dr. Sophia also said, however, that the issues were "not a permanent

impairment."  (*Id.*)  Dr. Sophia further stated that if Plaintiff "could find a fulfilling

job that did not exacerbate her physical problems, her mood likely would

improve."  (*Id.*)

The ALJ found Dr. Sophia's opinion was not persuasive on grounds that (1)

the assessment of Plaintiff's physical condition was outside the scope of Dr.

Sophia's expertise; (2) her opinion was not indicative of Plaintiff's permanent

mental health state; (3) was internally inconsistent; and (4) was inconsistent with

other evidence in the record.  (A.R. 24.)  The ALJ's reasoning was valid and

supported by the evidence.

First, a medical source's area of education and training is relevant to the

persuasiveness of their opinion.  20 C.F.R. § 416.920c(c)(4).  Because Dr. Sophia

is apparently only certified as a psychologist, the ALJ could permissibly find Dr.

Sophia's statements about Plaintiff's physical condition less persuasive because it

was beyond her recognized expertise.

Second, an ALJ can reject a medical opinion that is not based on the

claimant's long-term functioning.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th

Cir. 2008). Here, Dr. Sophia specifically opined that Plaintiff's mental

impairments were not permanent. (A.R. 682.) As such, this was a reasonable

reason for the ALJ to discount the opinion.

Third, a discrepancy between a doctor's opinion and the doctor's own

examination findings is an appropriate reason for the ALJ to discount a medical

opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); 20 C.F.R. §

416.920c(c)(1). The ALJ accurately noted that Dr. Sophia's opinion of marked

limitations in social functioning was inconsistent with her examination findings

that Plaintiff was polite and cooperative and had no deficits in her social judgment

and decision-making. (A.R. 679, 681.) Likewise, Dr. Sophia's opinion of marked

limitations in short term memory was inconsistent with her testing that indicated

Plaintiff's overall memory was intact. (A.R. 680.)

Finally, inconsistency with the overall record is another valid reason to

discount a medical opinion. 20 C.F.R. § 416.920c(c)(2). The ALJ found

Plaintiff's reported activities – such as taking care of two disabled individuals and

managing her finances – were inconsistent with Dr. Sophia's opinion of markedly

limited social functioning or memory. The ALJ's observations are supported by

the record. (*See* A.R. 123, 128-129, 423, 426, 701, 708, 724, 757, 790, 916, 977,

999.)

      c.   <u>Ms. Wear</u>

Plaintiff further argues that the ALJ ignored the evidence of a mental health counselor, Kyanne Wear.  Ms. Wear did not provide a medical opinion, but the ALJ did consider treatment notes from Ms. Wear in her decision.  (A.R. 23.)  The ALJ cited examination findings from Ms. Wear indicating Plaintiff was routinely found to have normal behavior, appearance, speech, thought process, intact memory, cognition and judgment.  (A.R. 23.)  The record is consistent with the ALJ's observations of Ms. Wear's notes.  (*See* A.R. 933, 946, 950, 953-54, 957-58, 962, 975, 979, 983, 987, 999, 1016, 1019, 1030, 1039, 1059, 1062, 1065, 1068, 1071.)

Additionally, treatment notes generally do not constitute medical opinions. *See* 20 C.F.R. § 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in your work-related abilities.).  Thus, because the treatment notes did not address what Plaintiff can still do, or whether she had an impairment-related limitation or restriction on her ability to work, the ALJ was not required to consider the supportability or consistency of the notes under the requirements of 20 C.F.R. §§ 404.1520c, 416.920c.

Accordingly, the Court finds the ALJ did not err in considering the medical opinion evidence.

### C.    The ALJ's Consideration of the Listings

Plaintiff argues her impairments meet the Listings in sections 1.15 (musculoskeletal disorder, compromise of nerve root), 12.04 (depression), 12.06 (anxiety), 12.13 (bulimia nervosa), and 9.00 (diabetes) of appendix 1.  The Commissioner argues that Plaintiff's impairments did not meet any of the identified Listings.

For a claimant to qualify for benefits under a Listing, "[s]he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  "An impairment that manifest only some of those criteria, no matter how severely, does not qualify." *Id.*

a.    Listing 1.15

To meet a Listing under 1.15 for compromise of a nerve root, there must be objective evidence of muscle weakness, in addition to several other criteria.  20 C.R.F. Part 404, Subpart P, Appendix 1 § 1.15(B)(1).  Here, the ALJ accurately found that Plaintiff's back impairment did not result in motor loss or weakness. (A.R. 19.)  Rather, the medical record shows Plaintiff had no demonstrated muscle

weakness.  (*See e.g.*, A.R. 418, 501, 656, 672.)  Therefore, Plaintiff did not meet Listing 1.15.

          b.      <u>Listings 12.04, 12.06 and 12.13</u>

To meet a Listing under 12.04 for depressive disorders and 12.06 for anxiety disorders, the claimant must satisfy the requirements of paragraphs A (medical criteria) and B (functional criteria), or paragraphs A and C (serious and persistent criteria).  20 C.F.R. § Pt. 404, Subpart P, Appendix 1 § 12.00.  To meet the Listing under 12.13 for eating disorders, the claimant must satisfy both paragraphs A and B.  *Id.*

To meet the paragraph B criteria, the claimant's mental disorder must result in an "extreme" limitation of one area, or "marked" limitation of two of the following four areas, of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  *Id.* at § 12.00(A)(2)(b).  To satisfy the paragraph C criteria, a claimant's mental disorder must be "serious and persistent"; that is, a medically documented history of the existence of the disorder over a period of at least 2 years, and the evidence must satisfy the criteria in both C1 and C2 (see 12.00G).  *Id.* at § 12.00(A)(2)(c).

Here, the ALJ found that Plaintiff had only moderate or mild limitations in each of the four areas, and thus did not meet the paragraph B criteria.  (A.R. 19-

20.)  The ALJ also found that Plaintiff failed to meet the criteria in paragraph C.

(A.R. 20.)

Plaintiff argues the ALJ should have found that she satisfied the paragraph B

criteria based on the opinion of Dr. Sophia that Plaintiff had marked impairments

in two domains.  As the Court has determined, however, the ALJ did not err in

discounting Dr. Sophia's opinion.  Further, in discussing each of the paragraph B

criteria, the ALJ cited specific evidence from the record to support her conclusions.

(A.R. 19-20.)  The ALJ's observations are consistent with the evidence in the

record.  (*See e.g.* A.R. 123, 125, 128-29, 423, 426, 701, 724, 752, 757-58, 766,

790, 874, 876, 916, 977, 999, 1019, 1042).  As such, Plaintiff did not satisfy

Listings 12.04, 12.06 or 12.13.

      c.    Listing 9.00

Plaintiff asserts her diabetes qualifies as a listed impairment under Listing

9.00 for endocrine disorders.  There are no specific listings for endocrine disorders.

Rather, the claimant must show that her endocrine disorder resulted in listing-level

criteria for another impairment.  20 C.F.R. § Pt. 404, Subpart P, Appendix 1 §

9.00(B) ("We evaluate impairments that result from endocrine disorders under the

listings for other body systems.").  Here, Plaintiff does not point to any evidence

that her diabetes caused her to meet listing-level criteria of another specific

impairment, and none is evident from the record.

Plaintiff also asserts the ALJ failed to consider her polycystic ovarian syndrome as another endocrine disorder.  The ALJ did, however, consider polycystic ovarian syndrome, and determined it was non-severe.  (A.R. 18.)  The ALJ noted that since the alleged onset date Plaintiff had undergone "very little treatment related to polycystic ovarian disease."  (*Id.*)  The ALJ's determination is supported by the record, which indicates the condition was managed with contraceptive medication.  (*See* A.R. 44, 393, 464, 553, 972, 1051.)  Plaintiff, therefore, does not meet Listing 9.00.

Accordingly, the Court finds the ALJ's step three analysis is supported by substantial evidence

### D.    Vocational Expert's Hypothetical

Finally, Plaintiff argues the ALJ failed to incorporate all of her limitations into the hypothetical questions posed to the vocational expert.  The Commissioner contends the hypothetical questions included all of Plaintiff's limitations that were supported by the record.

Hypothetical questions posed to the vocational expert must set out all of the limitations and restrictions of the particular claimant.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the

assumptions in the hypothetical are not supported by the record, then the

vocational expert's opinion that the claimant has a residual working capacity has

no evidentiary value. *Embrey*, 849 F.2d at 422

As discussed above, the Court has determined the ALJ adequately supported

her reasons for discounting Plaintiff's subjective symptom testimony and the

medical opinions.  Accordingly, the hypotheticals the ALJ relied on properly

accounted for all of Plaintiff's limitations that the ALJ found to be supported by

evidence in the record.

Therefore, the Court finds the ALJ's determination at step five is supported

by substantial evidence.

## V.      CONCLUSION

Based on the foregoing,  **IT IS RECOMMENDED** that the

Commissioner's decision be **AFFIRMED**, and Plaintiff's motion for summary

judgment (Doc. 14) be **DENIED**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 10th day of November, 2022.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge